**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
ANDREW C. HAMILTON (299877)
*andrew@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:    (619) 798-2006
Facsimile:    (619) 343-2789

**Counsel for Plaintiff**

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD CLARK, on behalf of himself and all others similarly situated,<br><br>                  Plaintiff,<br><br>          v.<br><br>BEAUTY SOLUTIONS, LTD.<br><br>                  Defendant. | Case No:_____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br>**CAL. BUS. & PROF. CODE §§17200** *et seq.***;**<br>**CAL. BUS. & PROF. CODE §§17500** *et seq.***;**<br>**CAL. CIV. CODE §§ 1750** *et seq.***; and for**<br>**BREACH OF EXPRESS AND IMPLIED WARRANTIES; and**<br>**NEGLIGENT MISREPRESENTATION**<br><br>**CLASS ACTION** |

# TABLE OF CONTENTS

I.      Jurisdiction and Venue..................................................................................................1

II.     Intradistrict Assignment...............................................................................................1

III.    Nature of the Action.....................................................................................................1

IV.     Parties...........................................................................................................................3

V.      Plaintiff's Purchases of the Retinol Anti-Aging Cream Cleanser Product .................4

VI.     Retinyl Palmitate Increases Skin Cancer Mortality. ...................................................4

VII.    The Retinol Products Are Both Drugs and Cosmetics.................................................6

VIII.   Retinol Products Are Misbranded Because They Are False or Misleading or Fail to Disclose Adequate Warnings...........................................................................................................6

IX.     Retinol Products Are Unapproved New Drugs.............................................................7

X.      Defendant's Retinol Products Are Unlawful Acne Drug Products. ............................8

XI.     Specific Misrepresentations, Material Omissions, and Deceptive Acts ...................10

        A.      Retinol Website in General ............................................................................10

        B.      Retinol Anti-Aging Cream Cleanser (and Gel Cleanser) ..............................14

        C.      Retinol Skin Brightener .................................................................................16

        D.      Retinol Vitamin A Gel ...................................................................................16

        E.      Retinol Anti-Wrinkle Facial Serum ..............................................................17

        F.      6x Retinol Super Serum .................................................................................17

        G.      Retinol Advanced Brightening Serum ...........................................................18

XII.    Defendant's Practices are "Unfair" Within the Meaning of the California Unfair Competition Law. ......................................................................................................18

XIII.   Defendant's Practices are "Unlawful" Under the California Unfair Competition Law. .........19

XIV.    Reliance and Injury ....................................................................................................20

XV.     Delayed Discovery .....................................................................................................21

XVI.    Class Action Allegations.............................................................................................21

Causes Of Action .................................................................................................................23

Prayer for Relief...................................................................................................................30

i

Plaintiff Howard Clark, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant Beauty Solutions, Ltd. and upon information and belief and investigation of counsel, alleges as follows:

**I.     JURISDICTION AND VENUE**

1.     Jurisdiction is proper here because the sale and marketing of the product in question occurred in California, and because all claims are asserted under the laws of California.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and suffered injuries as a result of Defendant's acts in this District, Defendant conducts business in this District and has intentionally availed itself of the laws and markets of this District through the distribution and sale of its products in this District, and Defendant is subject to personal jurisdiction in this District.

**II.    INTRADISTRICT ASSIGNMENT**

3.     This civil action arises out of the events and omissions of Defendant Beauty Solutions, Ltd., which occurred in San Francisco. Pursuant to Civil Local Rule 3-2(c), this action should be assigned to the San Francisco or the Oakland Division. Plaintiff requests the San Francisco Division as it is closer to his residence.

**III.   NATURE OF THE ACTION**

4.     Defendant manufactures, markets, distributes, and sells a line of "L de L Skincare Cosmetics Retinol Vitamin Enriched" products ("Retinol Products") which Defendant advertises as providing anti-aging benefits to skin health, reduction of acne, and skin cell renewal benefits. These products include Retinol Anti-Aging Cream Cleanser, ("Cream Cleanser") purchased by Plaintiff.

5.     The claims made on the Retinol Products' labels and website are misleading under California's consumer protection statutes, namely the Consumer Legal Remedies Act, the Unfair Competition Law, and the False Advertising Law. Moreover, the labeling and advertising for the Retinol Products also violate California's "baby FDCA" statute, also known as the Sherman Law.

6.     Similarly, the claims on many Retinol Products' labels and websites, including Cream Cleanser's label, are contrary to those allowed by the Food, Drug, and Cosmetic Act, 21 U.S.C. 301 *et seq*. ("FDCA"), and subject any individual manufacturing or selling it is liable for the sale of an

unapproved new drug.

7.     Defendant's misrepresentations and omissions, described in detail herein, seek to deceive consumers into the belief that Retinol Products are safe, legal, and effective formulations that improve and protect skin health.

8.     Defendant used various marketing methods to falsely represent many of the Retinol Products as products that can provide benefits to skin health similar to the results that a drug product would provide.

9.     Plaintiff Howard Clark purchased and used Cream Cleanser in reliance upon these deceptive claims and omissions, and also with the belief that the product was sold in compliance with state and federal regulation.

10.     Mr. Clark used Cream Cleanser as directed, but it failed to deliver the advertised benefits.

11.     The Retinol Products are:

- Retinol Vitamin A Eye Gel
- Retinol Vitamin A Eye Gel Pads
- Retinol Night Cream
- Retinol Anti-Wrinkle Facial Serum
- Retinol Anti-Aging Gel Cleanser
- Retinol Anti-Aging Cream Cleanser
- Retinol Anti-Aging Facial Oil
- Retinol Anti-Aging Hand Cream
- Retinol Anti-Aging Body Lotion
- Retinol Anti-Aging Sheet Mask
- Retinol Anti-Aging Starter Kit
- Retinol Anti-Aging Cleansing Towelettes
- Retinol Day Cream Broad Spectrum SPF 20
- Retinol Men's Daily Moisturizer
- Retinol Men's After Shave Balm
- Retinol Men's Eye Cream

2

- Retinol Men's Anti-Wrinkly Facial Serum
- Retinol Men's Charcoal Blackhead Remover
- Retinol Men's 3-in-1 Cleansing Wash
- Retinol Men's Shave Cream
- Retinol Skin Brightener
- Retinol Instant Radiance Booster
- Retinol 6x Super Retinol Serum
- Retinol Gold Peel-Off Mask
- Retinol Purifying Charcoal Mask
- Retinol Advanced Brightening Mask
- Retinol Advanced Brightening Night Cream
- Retinol Advanced Brightening Serum

12.     Defendant engages in a common course of conduct, selling products containing retinyl palmitate with misleading and unlawful drug claims and failing to warn of their dangers.

13.     Defendant makes outrageous claims about the efficacy of the retinyl in those products that are misleading, and which are intended to cause consumers to believe that Defendant's products will affect the structure and function of the body, or cure, mitigate, prevent, or treat disease, even though none of the products have been approved by the FDA.

14.     This action is brought to remedy Defendant's unfair, deceptive, immoral, and unlawful conduct. On behalf of the class defined herein, Plaintiff seeks an order compelling Defendant to, *inter alia*: (1) cease marketing and selling the Retinol Products as unapproved new drugs; (2) conduct a corrective advertising campaign; (3) destroy all misleading and deceptive materials and products; (4) award Plaintiff and the Class members restitution, actual damages, and punitive damages to the extent permitted under the law; and (6) pay costs, expenses, and reasonable attorney fees.

IV.     **PARTIES**

15.     Plaintiff Howard Clark is a resident of San Francisco, California who purchased Retinol Anti-Aging Cream Cleanser for personal use.

16.     Defendant Beauty Solutions is a New York limited company with its principal place

3

of business at 411 Fifth Ave. in New York City. Beauty Solutions manufactures, markets, distributes, and sells the Retinol Products.

## V.    PLAINTIFF'S PURCHASES OF THE RETINOL ANTI-AGING CREAM CLEANSER PRODUCT

17.    Plaintiff Howard Clark purchased in San Francisco Retinol Anti-Aging Cream Cleanser in approximately late 2016 or early 2017. He then used it as directed on the product label.

18.    When purchasing Retinol Anti-Aging Cream Cleanser during the Class Period, Plaintiff read and relied on Defendant's various representations, described herein, which render Retinol Anti-Aging Cream Cleanser misleading under California's CLRA, Unfair Competition Law, and False Advertising law and render Retinol Anti-Aging Cream Cleanser an unlawful, unapproved new drug.

19.    Relying on Defendant's claims, Plaintiff believed that Retinol Anti-Aging Cream Cleanser was a safe and effective "Anti-Aging Cream" which would "optimize skin" and provide "cell renewal benefits." Plaintiff would not have purchased Retinol Anti-Aging Cream Cleanser absent these advertisements.

20.    Because Plaintiff expected these statements to be true and honest, but they were not, he did not receive the benefit of his purchases.

## VI.    RETINYL PALMITATE INCREASES SKIN CANCER MORTALITY.

21.    Defendant promotes the ingredient retinyl palmitate[1] as a chemical which is beneficial to skin health, when in fact retinyl palmitate is dangerous to health and damaging to skin health.

22.    For years, government and independent scientists have been investigating retinyl palmitate as a "photocarcinogen—meaning that it may speed the development of skin tumors and lesions on sun-exposed skin."[2]

23.    A 2010 study by the National Toxicology Program concluded that

---

[1] Referred to by Defendant also as Retinol Palmitate, Retinol, and Vitamin A.
[2] Lunder, Sonya. "What Scientists Say about Vitamin A in Sunscreen." *Environmental Working Group* (2011).

CLASS ACTION COMPLAINT

Compared to the control cream, [retinyl palmitate] further enhanced the effects of [simulated solar light] in SKH-1 mice based upon earlier onsets and increased multiplicities of in-life skin lesions.

Compared to the control cream, RP further enhanced the photocarcinogenic activity of SSL in SKH-1 mice based upon increased incidences and multiplicities of squamous cell neoplasms of the skin.[3]

24.    The study further linked the results to cancer in humans, noting that "[t]he hairless mouse model has proved to be a useful model for human phototoxicity and photoaging studies."[4]

25.    The study found that "mice treated with small doses of retinyl palmitate and ultraviolet light developed skin tumors faster than untreated, light-exposed mice or those treated only with a control cream. ***There were more numerous tumors on every animal treated with retinyl palmitate.***"[5]

26.    The bar graph below shows how in animals exposed to UV light, retinyl palmitate causes a more rapid onset of tumor development:[6]



27.    Other studies have found that retinyl palmitate induces DNA damage and cytotoxicity

---

[3] NTP Technical Report on the Photococarcinogenesis Study of Retinoid Acid and Retinyl Palmitate in SHK-1 Mice,  NTP TR 568 at 127 (2012).

[4] Retinoic Acid and Retinyl Palmitate, NTP TR 568 at 127.

[5] Lunder, Sonya. "What Scientists Say about Vitamin A in Sunscreen." Environmental Working Group (2011).

[6] *Id.*

1  when exposed to UVA light.[7]

2  **VII.   THE RETINOL PRODUCTS ARE BOTH DRUGS AND COSMETICS.**

3       28.    The Retinol Products are drugs because they are advertised to affect the structure or

4  function of the body, or to cure, mitigate, treat, or prevent a disease.

5       29.    In addition to being classified as drugs, the Retinol Products are cosmetics because

6  they are "(1) articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or

7  otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting

8  attractiveness, or altering the appearance, and (2) articles intended for use as a component of any

9  such articles . . . ." 21 U.S.C. § 321(i).

10  **VIII.   RETINOL PRODUCTS ARE MISBRANDED BECAUSE THEY ARE FALSE OR**

11       **MISLEADING OR FAIL TO DISCLOSE ADEQUATE WARNINGS.**

12       30.    It is unlawful to manufacture or sell any drug or cosmetic that is misbranded. 21

13  U.S.C. § 331(a), (b), (c), & (g).

14       31.    A drug or cosmetic is misbranded "[i]f its labeling is false or misleading in any

15  particular." 21 U.S.C. § 352(a)(1) (misbranded drugs); 21 U.S.C. § 362(a) (misbranded cosmetics).

16       If an article is alleged to be misbranded because the labeling or advertising is
17       misleading, then in determining whether the labeling or advertising is misleading
         there shall be taken into account (among other things) not only representations made
18       or suggested by statement, word, design, device, or any combination thereof, but also
         the extent to which the labeling or advertising fails to reveal facts material in the
19       light of such representations or material with respect to consequences which may
20       result from the use of the articles to which the labeling or advertising relates under
         the conditions of use prescribed in the labeling or advertising thereof or under such
21       conditions of use as are customary or usual.

22  21 U.S.C.S. § 321(n).

23       32.    As alleged in greater detail herein, the Retinol Products are misleading, and therefore

24  misbranded, because they purport to improve skin health and complexion, when in truth they do not,

25

26  ———————————————
     [7] Yan J, et al. "Photo-induced DNA damage and photocytotoxicity of retinyl palmitate and its
27  photodecomposition products." TOXICOL. IND. HEALTH 2005 Sep;21(7-8):167-75. DOI:
     10.1191/0748233705th225oa.
28

6

CLASS ACTION COMPLAINT

and can cause long-term skin damage and promote skin cancer.

33.    Likewise, "[t]he labeling of a drug which contains two or more ingredients may be misleading by reason, among other reasons, of the designation of such drug in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." 21 C.F.R. § 201.6(b). Here, the Retinol Products each contain several ingredients, but the names include or suggest only the ingredient retinol.

34.    In addition to being false or misleading, a drug is misbranded "[u]nless its labeling bears (1) adequate directions for use; and (2) such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users . . . ." 21 U.S.C. § 352(f). The Retinol Products lack adequate warnings necessary for their safe use because they are unsafe.

35.    Similarly, because the Retinol Products claim to treat conditions not amenable to self-diagnosis, directions are not and likely cannot be written such that a layperson can safely use this product to treat those conditions. The Retinol Products' labels therefore lack adequate directions for use, and are mislabeled.

36.    Defendant's deceptive acts also render the Retinol Products' labels misleading under Cal. Health & Safety Code §§ 110100 (adopting all FDA regulations as state regulations) & 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded."), as well as Cal. Bus. & Prof. Code §§ 17200 (Unfair Competition Law) & 17500 (False Advertising Law), and Cal. Civ. Code § 1750 (Consumer Legal Remedies Act).

**IX.    RETINOL PRODUCTS ARE UNAPPROVED NEW DRUGS.**

37.    A new drug is any drug not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof. Here, the Retinol Products are new drugs because they are not generally recognized as safe and effective for the intended uses.

38.    "No person shall introduce or deliver for introduction into interstate commerce any new drug . . ." without approval by the FDA. 21 U.S.C § 355(a); *see also* 21 U.S.C. § 331(d).

39.    California similarly prohibits the sale of unapproved new drugs. Cal. Health & Saf. Code § 111550.

40.    Defendant has not received approval from the FDA to sell any of the Retinol Products.

41.    Defendant's failure to comply with state and federal law puts consumers at risk, and gives it an unfair advantage over competitors that do commit the time and expense of complying with such necessary regulations.

42.    The Retinol Products do not qualify for the reduced level of regulation applicable to certain nutrition supplement products for several reasons. The website and label neither describe the role of any nutrient or dietary ingredient intended to affect the structure or function in humans, characterize the documented mechanism by which any nutrient or dietary ingredient acts to maintain such structure or function, nor describes general well-being from consumption of any nutrient or dietary ingredient. 21 U.S.C. § 343(r)(6)(A).

43.    The claims on the website and labels do not relate to any classical nutrient deficiency, and Defendant does not have substantiation that its statements are truthful and not misleading pursuant to 21 U.S.C. § 343(r)(6).

44.    Neither the labels of Retinol Products nor the website state that "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." 21 U.S.C. § 343(r)(6)(C).

## X.    DEFENDANT'S RETINOL PRODUCTS ARE UNLAWFUL ACNE DRUG PRODUCTS.

45.    Pursuant to 21 C.F.R. § 333.303, products which are "used to reduce the number of acne blemishes, acne pimples, blackheads, and whiteheads" are "acne drug products."

46.    Defendant, on its website, claims that "each [Retinol Product] contains retinol which is derived from vitamin A. It is the most proven, effective, and powerful ingredient for treating skin conditions like acne."

8

47.     Defendant's website also contains a page titled "RETINOL HELPS FIGHT ACNE."

48.     The page features a verbatim copy of a July 14, 2016 article from glamour.com titled "So, It Looks Like Free Radicals Are to Blame for Acne, Too."

49.     The article characterizes retinol as a "topical treatment[] for acne."

50.     Another page on Defendant's website titled "RETINOL: EVERYTHING YOU NEED TO KNOW," states:

> Along with Retinol's proven anti-aging benefits, it also assists with clearing up and preventing acne. Retinol breaks down into retinoic acid once it is absorbed into the skin, and some researchers say it functions identically to prescription versions of retinol, such as Retin-A. These prescription treatments are effective at banishing acne for good.
>
> Non-prescription Retinol is delivered in skincare products in a way that is more tolerated by the skin, which leads to less irritation and side effects. When applied to the skin, retinol works straight away to unclog pores and prevent any build up of dead skin cells clogging up the pores. As Retinol acts as a messenger to cells, once absorbed, it kicks any lazy, sluggish cells into action, improving pore function. This is why a lot of people notice a reduction to the size of their pores when using Retinol.

51.     Further, Defendant's website makes the following additional claims relating to retinol's ability to treat acne on its website:

- "Topical forms of retinol effectively treat acne, according to the Mayo Clinic. It works by unplugging your follicles and exfoliating your skin cells to keep pores clear. Simultaneously, retinol also helps eliminate bacteria that cause pimples, creating a two-pronged acne-destroying situation. Try: Retinol Anti-aging Gel Cleanser and Serum"

- "Clears Acne"

- "In the mid-1980s, dermatologists were using prescription strength retinol to treat adult acne. As patients acne improved **they also noticed side effects that triggered cell turnover, boosted exfoliation, and promoted collagen and elastin renewal**"

- Retinol "resurfaces to smooth fine lines and wrinkles and unclogs pores to treat acne prone skin too."

- "Our Retinol Facial Serum is also quite effective in treating acne breakouts"

52.     These claims render the Retinol Products "acne drug products" within the meaning of 21 C.F.R. § 333.303.

9

53.    As "acne drug products," the Retinol Products are required to comply with all provisions of 21 C.F.R. § 333.350 relating to the labeling of such products.

54.    Defendant's failure to comply with all provisions of 21 C.F.R. §§ 333.303 and 333.350 constitute violations of the UCL's "unlawful" prong.

## XI.    SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DECEPTIVE ACTS

55.    Below are examples of the false and misleading representations made on the Retinol Product labels and webpages. Each of the Retinol Product webpages and labels contain language identical or substantially similar, such that each qualifies as an unapproved new drug, and that each makes false claims about the efficacy and safety of the products.

### A.    Retinol Website in General

56.    The Retinol Product's website is "labeling" under state and federal law because it accompanies and explains the claims on the Retinol Products' physical packaging, and because there is a link to the website on the physical packaging. Each of the labels of the Retinol Products includes a URL for the www.retinoltreatment.com website.

57.    A video on the home page of the website claims to have sold "10 Million Jars," and makes the following claims about the Retinol Products (emphasis added):

Skincare LdeL Cosmetics have sold over 10 million jars of our leading retinol anti-aging formulas. That's an impressive number but let's find out the story behind our globally recognized brand and how these Retinol products can **rejuvenate the skin**.

Hi I'm Rachael Newman, global ambassador for skincare LdeL Cosmetics, the maker of Retinol. Let me introduce you to these amazing Retinol collections: Anti-Aging, Advanced Brightening, and Retinol Men. Each product contains retinol which is derived from vitamin A. **It is the most proven, effective, and powerful ingredient for treating skin conditions like acne and the visible signs of aging.** It's no secret dermatologists, estheticians, beauty advisors and especially consumers know the potency of retinol. Skin care LdeL cosmetics have been bringing these benefits to you for over 25 years.

Retinol is not just our name, it's our innovation. **In the mid-1980s, dermatologists were using prescription strength retinol to treat adult acne.** As patients acne improved **they also noticed side effects that triggered cell turnover, boosted exfoliation, and promoted collagen and elastin renewal.** All significant findings in reversing the signs of aging. This breakthrough discovery led our chemists to develop a group of **non-prescription formulations that were safe and effective for even the most sensitive skin**

10

**types.** Retinol the brand was born and the visionary founder, chemist Leonard de Lane, called the brand retinol skincare LdeL Cosmetics. Today all of our products contain retinol and are enriched with vitamin C and E. They're made in the USA and governed by strict FDA regulations.

How much retinol is in each product? Check our packaging. We're the only brand to list the amount of retinol right on each box. IU stands for international units, the globally recognized measure of potency for vitamins.

The Retinal Anti-Aging collection includes some of our most popular products. Day Cream brings you the anti-aging benefits of retinol with the sun protection of broad-spectrum SPF 20, the ultimate age fighting duo. Night Cream Restorative Moisturizer **works while you sleep to rejuvenate your skin** with visible results after just two weeks. Anti-Wrinkle Facial Serum has the highest potency of retinol and contains 500,000 IUs. It **resurfaces to smooth fine lines and wrinkles and unclogs pores to treat acne prone skin too.** Vitamin A Eye Gel is a cooling treatment that targets the look of puffiness and dark circles. The cool micro encapsulated beads give you that extra burst of retinol. Our Advanced Brightening Collection lends the **anti-aging benefits of retinol** with the innovative brightening technology of melavoid. **Melavoid identifies and targets dark spots and discoloration and uniformly brightens the skin for radiant even toned complexion.**

Let's not forget the men. Moisturizers, masks, and eye creams aren't just for wives and girlfriends anymore. Retinol skincare offers a collection of creams, serums, and lotions to **help smooth his laugh lines and his wrinkles**. These products help **rejuvenate and renew** but more importantly for you, they also smell great.

So what's the key to our retinol success? Retinol works, it's a go-to ingredient for anti-aging and the proof is in the results. Skincare LdeL Cosmetics discovered this 25 years ago and featured retinol in their formulations and their packaging. Visionaries well before their time. Since the beginning Skincare LdeL Retinol have been committed to developing healthy anti-aging products that improve skin texture and reduce the appearance of fine lines and wrinkles. That's our heritage, that's our promise. We're the leader in this category. Now you see why we've sold 10 million jars, the proof is in the results.

58.     A page called "Why Retinol" includes the following representations about the efficacy of Retinol:

- "Established in 1987, Skincare LdeL Cosmetics® is an original RETINOL based anti-aging skincare line. We are committed to developing healthy, anti-aging products that improve skin texture and reduce the look of fine lines and wrinkles. Our entire range of products are formulated with RETINOL Vitamin A, C, E and Fruit Extracts, for a younger-looking you."

- "Minimize Signs of Aging"

- "Reduce Fine Lines + Wrinkles"

11

- "Exfoliate, Renew + Resurface"

- "Support Collagen + Elastin Production"

- "Improve Radiance + Uneven Skin Tone"

- "Retinol Palmitate is a stable derivative of Retinol Vitamin A. Retinol loses efficacy in its raw form. This way, we MAXIMIZE efficacy and maintain stability in our products. With our high Retinol concentrations, you will see visible results. All products are formulated to noticeably reduce signs of aging, but gentle enough for even the most sensitive skin with twice daily use."

- "RETINOL BENEFITS [¶] WE WANT YOUR SKIN LOOKING ITS BEST, SO WE INCLUDED EXTRA SKIN-LOVING INGREDIENTS:"

- "Vitamin A: rejuvenates and renews skin through gentle exfoliation; increases collagen and elastin; improves skin texture and diminishes wrinkles"

- "Vitamin C: antioxidant; protects cells against free radicals; counteracts skin from aging by promoting + maintaining collagen; treats dark spots, discoloration and photo-aging"

- "Vitamin E Tocopherols: protects cells from damaging effects of free radicals and ultraviolet rays; helps reduce water loss; replenishes dehydrated moisture levels; allows skin to remain soft and healthy"

- "Broad Spectrum Sunscreen SPF 20: UVA/UVB protection against sun damage that contributes to aging; **protects + strengthens the collagen and elastin skin matrix** to maintain firmness; **prevents hyperpigmentation and melisma"**

- "Melavoid™: **lightens hyper-pigmented areas** to smooth and even out skin for uniform complexion"

59.     The Frequently Asked Questions page includes the following representations:

- "What is Retinol? Retinol is a Vitamin A derivative, used to reduce the appearance of fine lines and wrinkles, while decreasing oncoming or already existing signs of aging. Skincare LdeL Cosmetics® RETINOL has used Vitamin A, along with vitamins C + E and additional healthy ingredients, to create the best formulas for all skin types with one main goal – to fight aging."

- "Why Skincare LdeL Cosmetics® RETINOL skincare? Established in 1987, we began with a mission to feature the newly discovered anti-aging ingredient RETINOL (Vitamin A), introduced to minimize the signs of aging. We formulated with our chemists, and began with our Night Cream, Day Cream (SPF 20), and Eye Gel to make an introduction into the new, **"over-the-counter"** topical skincare market for Retinol. Since initiation, we have expanded our line to provide a complete regimen, along with a line RETINOL for Men and an Advanced Brightening line to **decrease the appearance of dark spots and discolored or pigmented skin**. All key products are made in USA."

12

- "How does RETINOL prevent signs of aging and reduce wrinkles? Retinol rejuvenates and renews skin through gentle exfoliation. **It increases collagen and elastin production**, improving skin texture, thus diminishing wrinkles and fine lines. We recommend using Retinol products twice daily."

- "When will I see results? Use products twice daily, for best results. With consistent use, you will begin to see anti-aging results within 4-6 weeks, and further progression over a longer period of time."

- "When should I start using RETINOL? The earlier the better. We suggest you should start working Retinol into your regimen gradually in your 20's to prevent oncoming signs of aging. This way, you can **slow the aging process** and **maintain collagen and elasticity production in the cells**, **keeping skin** young and **healthy**."

- "Our Retinol Facial Serum is also quite **effective in treating acne breakouts**. After your skin becomes acclimated to the products, begin to build your Retinol regimen, adding more products into your daily routine. If you have more mature skin, you may begin gradually with a few products, and increase your Retinol routine after a few weeks."

    60.    The website also has a blog post titled "What are the Benefits of Retinol?" which includes the following representations:

- "Vitamin A isn't just consumed orally in vitamin pills. Retinol, a form of vitamin A, is one of many ingredients found in various topical skin care products. It's widely used because **it has many applications and uses for the general improvement of your skin's health**. Check prospective skin care product labels to see if this influential ingredient is listed. It can be a factor in the efficacy of your chosen skin cream, serum or lotion. There are many benefits of adding Retinol to your beauty regimen:

- **Clears Acne** [¶] **Topical forms of retinol effectively treat acne**, according to the Mayo Clinic. It works by unplugging your follicles and exfoliating your skin cells to keep pores clear. Simultaneously, **retinol also helps eliminate bacteria that cause pimples**, creating a two-pronged acne-destroying situation. [¶] Try: Retinol Anti-aging Gel Cleanser and Serum

- Diminishes Wrinkles [¶] **Retinol creams work as a powerful antioxidant to help "repair skin damage,"** according to the University of Maryland Medical Center. Retinol **can help rejuvenate skin** and smooth the appearance of fine lines and wrinkles. [¶] Try: Retinol Day Cream and Night Cream

- Lightens Discolorations [¶] Skincare expert Paula Begoun, in her skin health guidebook, "Don't Go to the Cosmetics Counter Without Me," says retinol and its derivatives are "extremely effective" in helping to even skin tone and fade skin discolorations. This may be due to its exfoliating properties, helping to slough off dark cells to reveal lighter skin underneath. [¶] Try: Retinol Advanced Brightening

13

Collection and Skin Brightener"

61.     The front page for the Beauty Solutions website, retinoltreatment.com, includes a link to a video of television's Dr. Oz espousing the wonders of retinol:

The second best investment you need to make is something that has retinol in it. Now retinol is available over the counter. Doctors will give you a higher dose prescription if they think you need it, but you just go off and buy inexpensively. Now, my mom—**there's no medical way of doing this that's ideal**—but mom would always dot herself with little polka dots all over her face, especially under the eye and you want to do this once maybe twice a week, be careful you don't do too much if you notice redness or irritation right and I think this is better off in the evening because if you do it the morning the sun denatures it. In the evening you could be by yourself, you're not gonna have toxic effects of chemicals in the sun influencing the retinols. (Woman in video now speaking): I do Retinol Monday, Wednesday, Friday. So remember I do three days a week and at night. So, that's when I do it, Monday, Wednesday, Friday at night. (Switches to other man in video speaking): And then exfoliating? (Dr. Oz responds): Exfoliation is critical for a bunch of reasons. It actually, you know we talked about collagen back over there all the things **I'm talking about change collagen levels. The retinols especially do it, especially with the higher doses**.

### B.     Retinol Anti-Aging Cream Cleanser (and Gel Cleanser)

62.     During the Class Period, Defendant manufactured, advertised, and sold Retinol Anti-Aging Cream Cleanser and Gel Cleanser, which each contained misleading claims relating to the benefits to skin health.

63.     An exemplar of Retinol Anti-Aging Cream Cleanser's packaging, purchased by Plaintiff, is as follows:



64.    The Cream Cleanser label claims include:

- "Retinol Vitamin Enriched Anti-Aging Cream Cleanser delivers the anti-aging, **cell renewal benefits** of Retinol deep within your skin while washing away makeup and other impurities trapped in your pores. Used daily, it prepares and optimizes skin for your Retinol Skincare Anti-Aging Regimen."

65.    The website contains further claims including:

- "Retinol Anti-Aging Cream Cleanser helps deliver **skin renewal benefits of Retinol**, while washing away makeup and other impurities trapped in your pores. Use daily to prepare and optimize your skin for your Retinol Anti-Aging Regimen."

- "Leaves skin fresh and clean"

- "Exfoliates and helps improve skin texture"

- "Moisturizes and improves texture"

- "Helps minimize fine lines and wrinkles"

66.    The website and label for Gel Cleanser contain almost identical claims.

15

67.     This language renders Cream Cleanser and Gel Cleanser unapproved new drugs. This language was part of an intentional campaign to deceptively market Retinol Anti-Aging Cream Cleanser and Gel cleanser as safe and effective products that will provide anti-aging cell renewal benefits.

**C.     Retinol Skin Brightener**

68.     During the Class Period, the packaging of Retinol Skin Brightener contained misleading claims and claims relating to the structure and function of the body.

69.     The Skin Brightener label claims include:

- "Skin Tone Corrector"

70.     The website contains further claims including:

- "Skin Tone Corrector"
- "Retinol Skin Brightener minimizes the appearance of dull, uneven skin tone with Vitamins A, C & E and natural plant and fruit extracts. **Revitalize your skin safely and effectively** to enhance radiance and luminosity for a younger, brighter look."
- "Evens the look of dark spots as it brightens skin tone"
- **"Resurfaces** to smooth the appearance of fine lines and wrinkles"
- "Reduces the appearance of pores"

71.     This language renders Skin Brightener an unapproved new drug. This language was part of an intentional campaign to deceptively market Skin Brightener as a safe and effective product which will reduce uneven skin tone, yielding radiant, younger looking skin.

**D.     Retinol Vitamin A Gel**

72.     During the Class Period, the packaging of Retinol Vitamin A Gel contained misleading claims and claims relating to the structure and function of the body.

73.     The Vitamin A Gel label and website claims include:

- "Anti-Wrinkle **Treatment"**
- "Retinol Vitamin A Eye Gel **reduces visible signs of aging** around the delicate eye area. This effective eye gel will help minimize the appearance of puffiness and dark circles, while **restoring tone and elasticity**. Formulated without fragrance for use on even the most sensitive skin. Environmentally friendly micro-beads burst upon application."

74.     This language renders Vitamin A Gel an unapproved new drug. This language was

16

part of an intentional campaign to deceptively market Vitamin A Gel as a safe and effective product which will reduce the appearance of wrinkles.

### E.    Retinol Anti-Wrinkle Facial Serum

75.    During the Class Period, the packaging of Retinol Anti-Wrinkle Facial Serum contained misleading claims and claims relating to the structure and function of the body.

76.    The Anti-Wrinkle Facial Serum label claims include:

- "High Potency"
- "Firms & Tones"
- "Smoothes Lines"

77.    The Anti-Wrinkle Face Serum website claims include:

- "Retinol Anti-Wrinkle Facial Serum helps to visibly **improve skin's elasticity and tone**, while minimizing the appearance of fine lines and wrinkles. This powerful serum is formulated with the highest level of Vitamin A in our Retinol skincare regimen."
- "Resurfaces to smooth the look of fine lines and wrinkles"
- "Improves the appearance of firmness and tone"
- "Moisturizes to improve skin texture and clarity"

78.    This language renders Anti-Wrinkle Face Serum an unapproved new drug. This language was also part of an intentional campaign to deceptively market Anti-Wrinkle Face Serum as safe and effective product which will improve the structure of the skin, when it is not.

### F.    6x Retinol Super Serum

79.    During the Class Period, Defendant sold 6x Retinol Super Serum, which contained misleading claims and claims relating to the structure and function of the body.

80.    The 6x Retinol Super Serum website states:

- "6x Retinol Super Serum restores the look of smooth, beautiful and glowing skin with 3 Million I.U.'s of Retinyl Palmitate. This unique night-time accelerator **encourages your skin's renewal process** while you sleep. It lifts and firms as it targets lines, wrinkles, dark spots, pores and blemishes. Add this intensive serum to your nigh-time Retinol skincare regimen to achieve optimal anti-aging effectiveness. Start by adding a few drops 3 to 4 nights per week and gradually increase to nightly usage."
- "6X the potency of Anti-Wrinkle Facial Serum"

17

- **"Treats your skin** with 3 Million I.U.'s of Retinyl Palmitate, Vitamin A"
- "Targets lines, wrinkles, dark spots, pores and blemishes"
- "Improve the look of firmness for more contoured skin"

81. This language renders 6x Retinol Super Serum an unapproved new drug. This language was also part of an intentional campaign to deceptively market 6x Retinol Super Serum as safe and effective product which will improve the health of the skin, when it is not.

### G.    Retinol Advanced Brightening Serum

82. During the Class Period, Defendant manufactured and sold Retinol Advanced Brightening Serum, which contained misleading claims and claims relating to the structure and function of the body.

83. The Advanced Brightening Serum website states:

- "Advanced Brightening Serum is a weightless, **fast absorbing serum**, formulated with the highest potency of brightening ingredients."
- "Improves the appearance of uneven skin tone"
- "Smoothes to minimize the appearance of fine lines"
- "Antioxidant protection helps prevent from environmental damage"

84. This language renders Retinol Advanced Brightening Serum an unapproved new drug. This language was also part of an intentional campaign to deceptively market Retinol Advanced Brightening Serum as safe and effective product which will improve the health of the skin, when it is not.

### XII.    DEFENDANT'S PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW.

85. Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because its conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of this conduct to Defendant does not outweigh the gravity of the harm to Defendant's victims.

86. In particular, while Defendant's use of fraudulent advertising may have had some utility to Defendant in that it allows it to realize higher profit margins than if it did not use fraudulent advertising tactics, this utility is small and far outweighed by the gravity of the economic harm

18

Defendant inflicts upon consumers. Further, the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not an injury consumers themselves could reasonably have avoided.

## XIII.    DEFENDANT'S PRACTICES ARE "UNLAWFUL" UNDER THE CALIFORNIA UNFAIR COMPETITION LAW.

87.    Defendant's practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because the marketing, sale, and distribution of the Retinol Products violates the Federal Food, Drug, and Cosmetic Act, as well as California's Sherman Food, Drug, and Cosmetic Law.

88.    Defendant's conduct is "unlawful" because it violated the following portions of the Federal Food, Drug, and Cosmetic Act ("FDCA"):

- **21 U.S.C. § 331(a)**, prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded";
- **21 U.S.C. § 331(b)**, prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce";
- **21 U.S.C. § 355(a)**, prohibiting the sale of unapproved new drugs.

89.    Defendant's conduct also violates the California Sherman Food, Drug, and Cosmetic Law. Cal. Health & Safety Code § 110100 *et seq.*, which adopts all FDA regulations as state regulations.

90.    Defendant's conduct is further unlawful because it failed to comply with all provisions of 21 C.F.R. §§ 333.303 and 333.350.

91.    Defendant's conduct also violates other provisions of California law including, *inter alia*:

- **Cal. Health & Safety Code § 110398**, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded";
- **Cal. Health & Safety Code § 111550**, prohibiting sale of new drug unless approved under 21 U.S.C. § 355;
- **Cal. Civ. Code § 1770(a)**, prohibiting misleading practices in relation to the sale of goods;

19

- **Cal. Bus. & Prof. Code § 17500**, prohibiting false or misleading advertising.

92.    The fraudulent marketing and advertising of the Retinol Products constitutes a violation of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

93.    Defendant's unlawful acts allowed it to sell more units of the Retinol Products than it would have otherwise, and at a higher price, and at a higher margin.

94.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

95.    Plaintiff also seeks an order for the disgorgement and restitution of all revenue received by Defendant from the sale of the Retinol Products.

## XIV.    RELIANCE AND INJURY

96.    When purchasing Retinol Anti-Aging Cream Cleanser, Plaintiff was seeking products of particular qualities, including a product that safely and effectively improves skin health and provides anti-aging benefits.

97.    Plaintiff read and relied on, for his Retinol Anti-Aging Cream Cleanser purchase, the product's packaging and the efficacy messages it conveyed, which were substantial factors in his purchase.

98.    Plaintiff was further injured by Defendant's omission of information that would have been important to his purchasing decisions, in particular that its claims had never been evaluated by the FDA, whose regulations in fact prohibit Defendant's conduct.

99.    Plaintiff purchased Retinol Anti-Aging Cream Cleanser believing it had the qualities he sought based on the product's deceptive labeling and website and the natural assumption that cosmetic products sold in stores and online by large companies would deliver the advertised benefits, such as those advertised on their packaging. Instead, it was actually unsatisfactory to him for the reasons described herein.

100.    Plaintiff purchased Retinol Anti-Aging Cream Cleanser instead of competing products based on the false statements and misrepresentations described herein.

101.    Plaintiff suffered economic injury when he purchased Retinol Anti-Aging Cream Cleanser because it did not provide the advertised benefits.

## XV.    DELAYED DISCOVERY

102.    Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because Retinol Anti-Aging Cream Cleanser's violation of state and federal regulations was known to Defendant, but not to him, throughout the Class Period defined herein. Plaintiff is not a cosmetologist or doctor, but rather a lay consumer who did not have the specialized knowledge of Defendant.

103.    Plaintiff did not discover that Defendant's claims were deceptive, unfair, or misleading until approximately February 2018. Until this time, he lacked knowledge regarding the facts of his claims against Defendant.

## XVI.    CLASS ACTION ALLEGATIONS

104.    Plaintiff brings this action on behalf of himself and all others similarly situated (the "Class"), excluding Defendant's officers, directors, and employees, and the Court, its officers, and its families.

105.    The Class is defined as follows:

All individuals who purchased the Retinol Products in the United States for their own personal or household use, and not for resale, from January 1, 2012 to the present.

106.    Questions of law and fact common to Plaintiff and the Class include:

a.    Whether Defendant communicated efficacy messages through Retinol Product packaging and websites;

b.    Whether those messages were material, or likely to be material, to a reasonable consumer;

c.    Whether those messages were false, at variance with the truth, misleading, likely to deceive, and/or had the capacity to deceive the public and/or a reasonable consumer;

d.    Whether Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers;

e.    Whether Retinol Products are unapproved new drugs;

f.    Whether Retinol Products are adulterated;

21

g.      Whether the slight utility Defendant realizes as a result of its conduct outweighs the gravity of the harm the conduct causes to its victims;

h.      Whether Defendant's conduct violated public policy as declared by specific constitutional, statutory, or regulatory provisions;

i.      Whether the injury to consumers from Defendant's practices is substantial;

j.      Whether Defendant fraudulently omitted material information in advertising Retinol Products as safe and effective;

k.      Whether Defendant sold and distributed Retinol Products to the public in misleading packaging that was likely to deceive the public;

l.      Whether the Class is entitled to actual damages, restitution, rescission, punitive damages, attorneys' fees and costs, injunctive, and/or any other relief;

m.      Whether Defendant's conduct was knowing, or whether Defendant reasonably should have known of the conduct;

n.      Whether the statute of limitations should be tolled on behalf of the Class;

o.      Whether Defendant's conduct constitutes violations of California's False Advertising Law;

p.      Whether Defendant's conduct constitutes a violation of the California Consumer Legal Remedies Act;

q.      Whether Defendant's conduct constitutes a violation of the unlawful prong of California's Unfair Competition Law;

r.      Whether Defendant acted willfully, recklessly, negligently, or with gross negligence in violation of the law as alleged herein;

s.      Whether any applicable statute of limitations should be tolled on behalf of the Class;

t.      Whether members of the Class are entitled to restitution and, if so, the correct measure of restitution;

u.      Whether members of the Class are entitled to an injunction and, if so, its terms; and

v.      Whether members of the Class are entitled to any further relief.

107.    By purchasing Retinol Products, all Class members were subjected to the same wrongful conduct.

108.     Absent Defendant's material deceptions, misstatements, and omissions, and unlawful sale, distribution, and marketing of the Retinol Products, Plaintiff and other Class members would not have purchased the products.

109.     Plaintiff's claims are typical of the Class's claims.

110.     All Class members were subjected to the same economic harm when they purchased the Retinol Products, and suffered economic injury.

111.     Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

112.     The Class is sufficiently numerous, as it includes thousands of individuals who purchased Retinol Products during the Class Period.

113.     Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small, as little as $10.00 for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

114.     Defendant has acted on grounds applicable to the Class, thereby making final injunctive relief or declaratory relief appropriate concerning the Class as a whole.

115.     Questions of law and fact common to the Class predominate over any questions affecting only individual members.

116.     Class treatment is appropriate under Fed. R. Civ. P. 23. Plaintiff will, if notice is required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a class notice plan.

## CAUSES OF ACTION

### First Cause of Action

**Unfair Competition Law, Unfair Prong, Cal. Bus. & Prof. Code §§ 17200, *et seq.***

117.     In this and every cause of action, Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

118.     Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent

23

business act or practice."

119.    Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: he was denied the benefit of the bargain when he decided to purchase Retinol Anti-Aging Cream Cleanser over competing products, which are legal, less expensive, and do not make misleading or false drug claims on its products.

120.    Had Plaintiff been aware of Defendant's false and misleading advertising tactics, he would not have purchased Retinol Anti-Aging Cream Cleanser.

121.    Defendant's deceptive advertising allowed it to sell more units of the Retinol Products, and at a higher price.

122.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unfair" business acts and practices because Defendant's conduct is:

    a.    immoral, unethical, unscrupulous, and offends public policy;

    b.    the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct; and

    c.    the injury to consumers caused by Defendant's conduct is substantial, not outweighed by any countervailing benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

123.    Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding restitution of all monies from the sale of Retinol Products in an amount of $15 million or a greater amount to be proven at trial.

**Second Cause of Action**

**Unfair Competition Law, Unlawful Prong, Cal. Bus. & Prof. Code §§ 17200 *et seq.***

124.    Defendant made and distributed, throughout California and in this District, products that were fraudulently advertised and illegally offered for sale. The Retinol Products were placed into commerce by Defendant and sold throughout California.

125.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

24

126.    Defendant's conduct is "unlawful" because it violates the following portions of the Federal Food, Drug, and Cosmetic Act ("FDCA"):

- **21 U.S.C. § 331(a)**, prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded";

- **21 U.S.C. § 331(b)**, prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce";

- **21 U.S.C § 355(a)**, prohibiting the sale of unapproved new drugs.

127.    Defendant's conduct also violates California law including, *inter alia*:

- **Cal. Health & Saf. Code § 110100**, which adopts all FDA regulations as state regulations;

- **Cal. Health & Saf. Code § 110398**, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded";

- **Cal. Health & Saf. Code § 111550**, prohibiting sale of new drug unless approved under 21 U.S.C. § 355;

- **Cal. Civ. Code § 1770(a)**, prohibiting misleading practices in relation to the sale of goods;

- **Cal. Bus. & Prof. Code § 17500**, prohibiting false or misleading advertising.

128.    The fraudulent marketing and advertising of the Retinol Products constitutes a violation of the FDCA and the Sherman Law and, as such, violates the "unlawful" prong of the UCL.

129.    Defendant's unlawful acts allowed it to sell more units of the Retinol Products than it would have otherwise, and at a higher price, and at a higher margin.

130.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign. Plaintiff intends to purchase skin care products in the future, including from Defendant, when Defendant ceases its unfair business practices.

131.    Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding restitution of all monies from the sale of Retinol

Products in an amount of $15 million or a greater amount to be proven at trial.

## Third Cause of Action

### Unfair Competition Law, Fraudulent Prong, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

132.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

133.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices in that Defendant's conduct has a likelihood, capacity or tendency to deceive Plaintiff, the Class, and the general public.

134.    Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding restitution of all monies from the sale of Retinol Products in an amount of $15 million or a greater amount to be proven at trial.

## Fourth Cause of Action

### False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*

135.    In violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the Retinol Products without the knowledge that the products make misleading and unapproved claims.

136.    Defendant knew and reasonably should have known that the claims made on the label of the Retinol Products' websites were untrue and misleading.

137.    Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding restitution of all monies from the sale of Retinol Products in an amount of $15 million or a greater amount to be proven at trial.

## Fifth Cause of Action

### Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

138.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

139.    Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Retinol Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

  a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

  b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

  c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

  d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

140.    As a result, Plaintiff and the Class have suffered irreparable harm and are entitled to injunctive relief and restitution.

141.    As a further result, Plaintiff and the Class have suffered damages, and because the conduct was deliberate, immoral, oppressive, made with malice and/or contrary to public policy, they are entitled to punitive or exemplary damages.

142.    In compliance with Civ. Code § 1782, Plaintiff sent Defendant written notice of his claims on March 27, 2018. Pursuant to section 1782 *et seq.* of the CLRA, Plaintiff notified Defendant in writing by certified mail of the particular violations of the CLRA and demanded Defendant rectify the conduct detailed in this complaint.

143.    Defendant's wrongful business practices regarding the Retinol Products constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that the Retinol Products have characteristics, uses, benefits, and abilities which are false and misleading.

144.    Defendant received Plaintiff's written notice on March 30, 2018.

145.    Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices; requiring Defendant to commence a corrective advertising campaign; and awarding restitution of all monies and damages from the sale of Retinol Products in an amount of $15 million or a greater amount to be proven at trial.

**Sixth Cause of Action**

**Breach of Implied Warranty of Merchantability**

146.    Defendant, through its acts and omissions set forth herein, made representations to Plaintiff and the Class that the Retinol Products were a safe and effective means of repairing skin, encouraging cell regeneration, providing tissue repair, and increasing skin elasticity.

147.    Plaintiff and the Class bought the Retinol Products, which were manufactured, advertised, and sold by Defendant, as described herein.

148.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other members of the Class an implied warranty that those goods were merchantable.

149.    Defendant breached that implied warranty, however, in that the Retinol Products were and are not fit for their ordinary purpose and do not conform to the representations on their labels and the websites, as set forth in detail herein.

150.    As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods or the website.

151.    Plaintiff seeks an order awarding damages from the sale of Retinol Products in an amount of $15 million or a greater amount to be proven at trial.

**Seventh Cause of Action**

**Breach of Express Warranty**

152.    During the Class period, Defendant made written representations to the public, including Plaintiff, on the packaging of the Retinol Products, advertising them as a safe and effective means of improving skin health.

153.    These promises were printed on the label and the websites and became part of the basis of the bargain between the parties and thus constituted an express warranty.

154.    Thereon, Defendant sold the Retinol Products to Plaintiff and other consumers who bought the products from Defendant.

155.    However, Defendant breached these express warranties in that the Retinol Products

28

1  did not conform to the promises set forth on the product labels.

2      156.    Moreover, during the class period, Defendant made written representations to the

3  public, including Plaintiff, on the Retinol Products labels, advertising them as a safe and effective.

4      157.    These promises were made on the Retinol Products website and became part of the

5  basis of the bargain between the parties and thus constituted express warranties.

6      158.    Thereon, Defendant sold the Retinol Products to Plaintiff and other consumers who

7  purchased the products from Defendant.

8      159.    However, Defendant breached these express warranties in that the Retinol Products

9  do not conform to the promises listed above.

10     160.    As a result of these breaches, Plaintiff and other consumers in fact did not receive

11 goods as warranted by Defendant.

12     161.    Plaintiff seeks an order awarding damages from the sale of Retinol Products in an

13 amount of $15 million or a greater amount to be proven at trial.

14                            **Eighth Cause of Action**

15                          **Negligent Misrepresentation**

16     162.    Defendant represented that the Retinol Products would provide improved skin health

17 and other health benefits, and that the Retinol Products were safe and effective.

18     163.    In reality, the Retinol Products damage the health of consumers and are not safe and

19 effective.

20     164.    Although Defendant may have honestly believed its representations to be true, based

21 on the available scientific literature, Defendant had no reasonable grounds for believing the

22 representation was true when it was made.

23     165.    Defendant intended Plaintiff and other members of the putative Class to rely on these

24 representations.

25     166.    Plaintiff and other members of the putative Class reasonably relied on Defendant's

26 representations.

27     167.    Plaintiff and other members of the putative Class were harmed because they lost

28 money purchasing an unlawful and harmful product. The reliance on Defendant's representations

was a substantial factor in causing this harm.

168.    Plaintiff seeks an order awarding damages from the sale of Retinol Products in an amount of $15 million or a greater amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

A.  An order confirming that this class action is properly maintainable as a class action as defined above, appointing Plaintiff Howard Clark and his undersigned counsel to represent the Class, and requiring Defendant to provide class notice;

B.  An order requiring Defendant pay restitution and damages to Plaintiff and Class members;

C.  An order requiring Defendant to disgorge any benefits received from Plaintiff and its unjust enrichment realized as a result of its improper and misleading advertising, marketing, sale, and distribution of the Retinol Products;

D.  An order declaring the conduct complained of herein violates the Unfair Competition Law;

E.  An order requiring Defendant to pay restitution and damages to Plaintiff and members of the Class so that they may be restored any money which was acquired by means of any deceptive and fraudulent acts;

F.  An award of punitive damages to the extent allowable by law in an amount to be proved at trial;

G.  An order requiring Defendant to cease and desist its deceptive, unconscionable, and fraudulent practices;

H.  An order requiring Defendant to engage in a corrective advertising campaign;

I.  An award of prejudgment and post judgment interest;

J.  An award of attorney fees and costs; and

K.  Such other and further relief as this Court may deem just, equitable or proper.

//

//

//

DATED: August 2, 2018                              Respectfully Submitted,


                                                   s/ Gregory S. Weston
                                                   **THE WESTON FIRM**
                                                   GREGORY S. WESTON
                                                   ANDREW C. HAMILTON
                                                   1405 Morena Blvd., Suite 201
                                                   San Diego, CA 92110
                                                   Telephone:     (619) 798-2006
                                                   Facsimile:     (619) 343-2789

                                                   **<u>Counsel for Plaintiff</u>**

CLASS ACTION COMPLAINT